**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X     **Docket No.**

CYNTHIA CABAN,

        Plaintiff,          **COMPLAINT**

-*against*-

                  *PLAINTIFF DEMANDS*

CONSOLIDATED EDISON, INC.,  and SHARON MCRAE- *A TRIAL BY JURY*
HUDSON, *In Her Individual and Official Capacities,*

        Defendants.
-------------------------------------------------------------------------X

  Plaintiff, CYNTHIA CABAN, (hereinafter "Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), **42 U.S.C.** § 1981, the **New York State Human Rights Law**, (NYS Executive Law § 296, *et seq.*) ("NYSHRL"); and the **New York City Human Rights Law**, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against and retaliated against** and being subjected to a **racially hostile work environment** by her employer solely due to her race (Hispanic).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination upon which this Complaint is based on the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated 10/28/2019, with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8. At all relevant times herein, Plaintiff Cynthia Caban **(hereinafter "Plaintiff")**, is a Hispanic female resident of New York, Bronx County.

9. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state and federal laws.

10. At all relevant times herein, Defendant Consolidated Edison, Inc., **(hereinafter "Con Edison")**, is a domestic business corporation that engages in the utility industry. It is located at 4 Irving Place, New York, New York 10003.

11. At all relevant times herein, Defendant Con Edison "employs" fifteen or more, and therefore four or more employees, and is thus an "employer" within the meaning of Title VII, Section 1981, NYSHRL and NYCHRL.

12. At all times relevant hereto, Defendant Sharon McRae-Hudson (hereinafter "Sharon") was an employee of Defendant Con Edison holding a supervisory position.

13. Defendant Sharon was Plaintiff's direct supervisor and had supervisory authority over Plaintiff. Defendant Sharon had the power to hire, fire, demote, promote, and/or directly

2

affect the terms and conditions of Plaintiff's employment, as well as the power to direct Plaintiff's daily work activities.

14. Defendant Con Edison and Defendant Sharon are collectively referred to herein as "Defendants."

15. At all relevant times herein, Plaintiff was an employee of Defendants.

## FACTUAL ALLEGATIONS

16. On February 1, 2018, Plaintiff began working for Con Edison as a full-time Paralegal in its Tort Division, making an annual salary of $75,000.

17. At all times, Plaintiff was an above satisfactory employee that performed her duties without any major performance issues.

18. Upon information and belief, Plaintiff was never written up or disciplined for any work-related issues.

19. From the beginning of Plaintiff's employment, her direct supervisor, Defendant Sharon was hostile towards her.

20. Defendant Sharon attempted to dictate who Plaintiff should and should not associate with at the office.

21. Plaintiff was subjected to a work environment that was unsupportive, hostile and permeated with racial animus.

22. On or about April 1, 2018, Plaintiff requested to have her work hours adjusted to 7:00 AM to 3:30 PM. In response to Plaintiff's request, Defendant Sharon asked if Plaintiff intended to join the MS-13 crew (a Hispanic gang).

23. Plaintiff was deeply offended by the inappropriate question. When Plaintiff asked Defendant Sharon to explain what she meant by the question, she laughed and responded that all Hispanic employees worked those hours.

24. Plaintiff spoke to a colleague about the incident. The colleague revealed that racially charged comments were not uncommon for Defendant Sharon.

25. Later that day, Defendant Sharon described a Spanish dish and asked if Plaintiff could identify the name of the dish. When Plaintiff responded that she did not know, Defendant Sharon asked Plaintiff how is she Hispanic when she couldn't name the Spanish dish.

26. Defendant Sharon also commented that Plaintiff should feel ashamed to identify as a Hispanic when she couldn't speak Spanish fluently.

27. Plaintiff was deeply offended by the racially discriminatory comments of her supervisor.

28. Defendant Sharon animosity toward Plaintiff continued. On two separate occasion in April 2018, Plaintiff asked for guidance, but was met with hostility and negativity. Defendant Sharon commented that if she had known Plaintiff was so needy, she would not have employed Plaintiff.

29. Plaintiff felt helpless and unsupported, especially because she was still new in her position. She went so speak to one of the attorneys, John Howard, about the mistreatment and discrimination she was subjected to.

30. Mr. Howard asked Plaintiff to arrange a meeting with Nadine Rivellese.

31. On April 25, 2018, Plaintiff met with Nadine Rivellese (hereinafter "Ms. Rivellese"). Ms. Rivellese apologized for Defendant Sharon's conduct and arranged a meeting with Plaintiff and Ronald Mongeau (hereinafter "Mr. Mongeau"), the Paralegal Manager.

32. On April 27, 2018, Plaintiff met with Mr. Mongeau and reported all the discrimination and harassment she was subjected to.

33. In the meeting, Mr. Mongeau was immediately defensive and defended Defendant Sharon. He told Plaintiff he could not believe her accusations against Defendant Sharon.

34. Mr. Mongeau then called Defendant Sharon into the meeting.  She denied everything

4

Plaintiff reported.

35.    Mr. Mongeau then ambushed a few other paralegals by bringing them into the meeting and asking them in the presence of Defendant Sharon whether she was ever hostile to them or mistreated them.  This left the other paralegals feeling very uncomfortable.

36.    Thereafter, on April 30, 2018, Defendant Sharon stopped communicating with Plaintiff. Defendant Sharon intentionally ignored Plaintiff when she greeted other staff members, and often ignored Plaintiff's emails.

37.    On or about May 24, 2018, without any other follow-up or investigation, Plaintiff was notified that Mr. Mongeau would no longer be the Paralegal Manager, but instead Lisa Petta (hereinafter "Ms. Petta"), Defendant Sharon's mentor, would be the new Paralegal Manager.

38.    Ms. Petta also became Plaintiff's temporary direct supervisor on April 30, 2018 when Defendant Sharon went on medical leave.

39.    When Defendant Sharon returned from her leave on August 28, 2018, her treatment of Plaintiff had not changed.

40.    Plaintiff became concerned about her job, so she reached out to a Values In Action ("VIA") advisor, Reina Redwine (hereinafter "Ms. Redwine"). Ms. Redwine advised Plaintiff to meet with Defendants' human resource department.

41.    On September 11, 2018, Plaintiff met with Salvotore Pitonzo (hereinafter "Mr. Pironzo"), Defendant Con Edison's HR Manager. After reporting all the discrimination and mistreatment Defendant Sharon subjected her, Mr. Pitonzo determined that what Plaintiff experienced was mean at best, but that none of the conduct violated Defendant Con Edison's standards.

42.    Mr. Pitonzo told Plaintiff he would ask Ms. Rivellese if there's a possibility to have

5

Plaintiff supervised by someone other than Defendant Sharon, but that never happened.

43.    Mr. Pitonzo advised that if Plaintiff felt uncomfortable, she should ask Ms. Lisa Petta to sit in on Plaintiff's meetings with Defendant Sharon.

44.    On September 13, 2018, Plaintiff was asked by Defendant Sharon to meet with her to discuss her goals. Plaintiff asked Ms. Petta to attend the meeting as she was advised to do by HR, but Ms. Petta declined and cc'd Defendant Sharon on her response to Plaintiff.

45.    Plaintiff then reached out to Mr. Pitonzo regarding her impending meeting with Defendant Sharon and Ms. Petta's refusal to attend. Mr. Pitonzo responded that unless there was a safety issue, Plaintiff should do as she is told.

46.    Plaintiff felt powerless and had no choice but to attend the meeting with Defendant Sharon alone.

47.    At the meeting, Defendant Sharon claimed that several attorneys complained to her about Plaintiff's work being subpar. Plaintiff reached out to the attorneys individually.  They confirmed that they had never made such claims.

48.    Plaintiff realized this was another attempt by Defendant Sharon to sabotage her in retaliation for Plaintiff complaining about the discrimination Defendant Sharon subjected her to.

49.    On September 20, 2018, Plaintiff also received a mid-year review in which no claim of subpar performance was mentioned.

50.    On October 15, 2018, Defendant Sharon continued to harass Plaintiff. She informed Plaintiff that one of the Defendant Con Edison attorneys, Kaming Lau, (hereinafter "Ms. Lau") asked her to draft a motion because Plaintiff could not be trusted to complete it.

51.    Plaintiff met with Ms. Lau and Defendant Sharon on October 17, 2018 because Plaintiff wanted to address Ms. Lau's concern regarding the motion. Ms. Lau expressed that she

6

was unaware that Plaintiff was not trained on drafting all Defendant Con Edison's motions and directed Defendant Sharon to train Plaintiff on drafting motions.

52. After leaving the meeting, Defendant Sharon offered no training to Plaintiff. Instead, Defendant Sharon told Plaintiff that she needed to figure things out on her own.

53. On October 18, 2018, Plaintiff continued to feel unsupported and powerless. She reached out to Ms. Rivellese for guidance. Ms. Rivellese simply redirected her email to Defendant Sharon and Ms. Petta.

54. Plaintiff reached out to Defendant Con Edison's Ethics Department for help, the following day. The ethics department redirected Plaintiff to HR.

55. On November 30, 2018, Plaintiff was interviewed by an investigator, Sheldon Gofter, regarding various complaints concerning Defendant Sharon.

56. Plaintiff shared all the incidents involving Defendant Sharon that she previously reported. She was once again told that those incidents while inappropriate, were not in violation of Defendant Con Edison's Code of Conduct.

57. On December 10, 2018, Plaintiff was called into a meeting with Ms. Petta and HR Manager, Mr. Pitonzo.

58. At the meeting, Plaintiff was informed that she was being terminated because of her inability to grasp basic paralegal skills despite substantial training.

59. Plaintiff had no performance issues prior to her firing, despite the lack of training.

60. Plaintiff understood that her termination was another act of retaliation directly related to her reporting the discrimination and harassment she was subjected to.

61. Defendants' harassment was sufficiently severe and/ or pervasive to alter the conditions of the Plaintiff's employment (termination) and created an abusive working environment.

62. Defendants' hostile conduct occurred because of Plaintiff's protected characteristic – race.

63. As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

64. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

66. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

67. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

### AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION VIOLATIONS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer…
> discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's *race*, color,
> religion, sex, or national origin.

70. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff solely based on her race.

71. Defendants did nothing to protect Plaintiff against the hostile environment she faced on a daily basis.

8

72. As a result of Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

73. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

74. Defendants' conduct was malicious, willful and conducted with full knowledge of the law.

75. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A *SECOND* CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

78. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

79. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

80. As a result of Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

81. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A *THIRD* CAUSE OF ACTION
## FOR DISCRIMINATION UNDER *42 U.S.C.* § 1981

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

84. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Hispanic).

85. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to her race.

## AS A *FOURTH* CAUSE OF ACTION
## FOR RETALIATION UNDER *42 U.S.C.* §1981

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. By the acts and practices described above, Defendants retaliated against Plaintiff for her opposition to unlawful discrimination under 42 U.S.C. §1981.

88. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

89. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

10

### AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . *race*, disability . . . familial status … to discriminate against such      individual   in compensation or in terms, conditions or privileges of employment."

92. While employed with Defendants, Plaintiff was subjected to differential and disparate treatment, verbal abuse, hostile work environment and activity by Defendants herein.

93. Further, Defendants ignored Plaintiff's complaints and requests for assistance and/or protection against the hostile environment she faced on a daily basis.

94. As a result of Defendants actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

95. Defendants conduct was malicious, willful and conducted with full knowledge of the law.

96. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### AS A *SIXTH* CAUSE OF ACTION FOR RETALIATION
### UNDER NEW YORK STATE EXECUTIVE LAW

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

98. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

99. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise

discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

100. Following Plaintiff's complaints, Plaintiff was subjected to a hostile environment permeated with discriminatory ridicule, comments, insults, adverse employment actions, and other retaliatory behavior.

101. As a result of Defendants actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

102. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A *SEVENTH* CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race,  . . . [or] national origin . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

105. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of her race (Hispanic).

## AS AN *EIGHTH* CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

108. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff engaging in protected activity.

### AS AN *NINTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(*Aider and Abettor Liability - Against Individual Defendant*)

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

111. Defendant Sharon engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### PUNITIVE DAMAGES

112. Defendants conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

113. As such, punitive damages are appropriate as a result of Defendants' above-described conduct. Plaintiff demands Punitive Damages as against Defendants.

### JURY DEMAND

114. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL and NYCHRL in that Defendants discriminated against Plaintiff on the basis of her race and retaliated against Plaintiff by subjecting Plaintiff to a hostile work environment for engaging in protected activity;

B.    Awarding damages to Plaintiff for all damages resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       November 1, 2019

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:    _/s/ Marjorie Mesidor_____
       Marjorie Mesidor, Esq.
       Irene Chan, Esq.
       *Attorneys for Plaintiff*
       **Phillips & Associates, PLLC**
       45 Broadway, Suite 620
       New York, New York 10006
       T: (212) 248-7431
       F: (212) 901-2107
       mmesidor@tpglaws.com
       ichan@tpglaws.com

14

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Cynthia Caban<br>1550 Unionport Road<br>Apt. 5-G<br>Bronx, NY 10462 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

RECEIVED OCT 3 0 2019 BY: _____

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2020-00220 | Julissa Soriano,<br>Investigator | (929) 506-5304 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____
**Kevin J. Berry,**
**District Director**

10/28/2019
*(Date Mailed)*

Enclosures(s)

cc: **Steve Scotti**
**Associate General Counsel**
**CONSOLIDATED EDISON OF NEW YORK, INC.**
**4 Irving Place, Room 1810S**
**New York, NY 10003**

**Marjorie Mesidor, Esq.**
**PHILLIPS & ASSOCIATES, PLLC**
**45 Broadway, Suite 620,**
**New York, NY 10006**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*